UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ABDUL MALIK, a/k/a/ "Bryon E. Rogers,"          :

                   Plaintiff,          :

          -against-          :

CITY OF NEW YORK, et al.,          :

              Defendants.          :

-------------------------------------------------------x

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:                          │
│ DATE FILED:  8/15/12            │
└─────────────────────────────────┘
```

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
PAUL A. CROTTY**

11 Civ. 6062 (PAC) (FM)

**FRANK MAAS,** United States Magistrate Judge.

       Pro se plaintiff Abdul Malik ("Malik"), also known as Bryon E. Rogers, is currently detained at the Manhattan Detention Complex ("MDC"). He brings this action, pursuant to 42 U.S.C. § 1983 ("Section 1983"), seeking monetary and injunctive relief. In his complaint (ECF No. 2 ("Complaint" or "Compl.")), Malik alleges that he was forced to wear prison-issued sneakers that have caused him physical problems while in the custody of the New York City Department of Correction ("DOC"), and that he has suffered other mistreatment by correction officers. Malik has named as defendants the City of New York; the Superintendent of the MDC, Rose Agro ("Superintendent Agro"); and correction officers Aviles ("Officer Aviles") and A.D. Santiago ("Officer Santiago") (collectively, the "Defendants").[1] The Defendants have moved to dismiss Malik's

---

[1]     On October 13, 2011, the Court issued a sua sponte order dismissing Malik's claims against the DOC and the Office of Corporation Counsel on immunity grounds. (ECF No. 9).

Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that the Defendants' motion be granted in part and denied in part.

I.      Background

        A.      Relevant Procedural History

        Malik's Complaint is dated August 17, and was received by the Pro Se Office of this Court on August 19, 2011. (Compl. at 1, 18).[2] By order dated October 13, 2011, Your Honor referred the case to me for general pretrial and dispositive motion purposes. (ECF No. 8). Thereafter, by order dated January 9, 2012, I directed the Defendants to file their motion to dismiss by February 3, 2012, and gave Malik twenty-eight days to respond. (ECF No. 15). The order was mailed to Malik at the Willard Drug Treatment Campus ("Williard"), his last known address, but was returned to the Court with an indication that he had been released from that facility. (See ECF No. 21).

        On February 2, 2012, the Defendants filed their motion to dismiss the Complaint. (ECF No. 17). Because it appeared that Malik had not received my January 9 order, I directed, on March 21, 2012, that Malik provide a response to the Defendants' motion by April 18, 2012. (ECF No. 21). The Court then received two letters from Malik dated March 16 (ECF No. 22 ("Pl.'s 1st Opp'n")), and April 12, 2012 (ECF No. 24 ("Pl.'s 2d Opp'n")). The latter submission included documents opposing the Defendants'

_____

        [2]      The Complaint has two attachments. For ease of reference, page numbers refer to the ECF pagination.

motion that he previously sent to the Court, but which were labeled improperly and had been returned to him.  (Id. at 11-33).

　　　　After I discovered that the version of the Complaint originally docketed by the Clerk of the Court did not contain every page of the Complaint, the Defendants were permitted to file any additional papers necessary to respond to the entire Complaint and to reply to Malik's opposition letters.  (ECF Nos. 25, 26).  Malik also was granted leave to file a supplemental response within ten days of his receipt of the Defendants' additional papers.  (ECF No. 25).

　　　　On May 16, 2012, the Defendants served and filed a reply memorandum of law.  (ECF No. 27).  Malik, however, has not submitted any further papers.

　　B.　　Facts

　　　　Unless otherwise noted, the following facts, taken from the Complaint and Malik's letters opposing the motion, are presumed to be true.

　　　　Malik was arrested and taken to the MDC on May 28, 2011, on a larceny charge.[3]  (See Compl. at 4).  Once there, he was allowed to wear his "Starbury sneakers size (14) EEE" until June 7, 2011, when correction officers conducted an "institutional" strip search of Malik as well as a search of his cell.  (Id.).  During the search, Officer Aviles, who noticed that Malik was wearing a kufi cap, made disparaging comments such

---

[3]　　Malik's current confinement at the MDC appears unrelated to the facts of this case since the DOC inmate locator indicates that he was arrested on a misdemeanor drug charge. The DOC website also indicates that three state parole violation warrants have been lodged with the DOC.  It is therefore unclear whether his time in custody in 2011 was the result of a parole violation, the larceny charge, or both.

as "M[u]sl[i]ms gotta get naked too," "come on, let me see what you are working with,"

"shut the fuck up, no talking during the search," and "take that yamaka or koooofi-off

bombmaker[.]" (Id. at 4-5). Officer Aviles stepped on, ripped up, and destroyed Malik's

Quran and Bible, broke his radio and commissary items, and refused his requests to speak

to a captain. (Id. at 4-5; Pl.'s 2d Opp'n at 13-14). Malik practices Islam and the Quran is

sacred to his religion. (Pl.'s 2d Opp'n at 14).

Officer Santiago later entered Malik's cell, told Officer Aviles to take

Malik's belongings if he was a "problem," and threatened Malik by standing two inches

from his face, saying "do something 'nigger' and we'll 'wash your black ass in here.'"

(Compl. at 5). The officers then pushed Malik onto his bed and took his sneakers, even

though Malik showed them a doctor's note that permitted him to wear the sneakers and

told them that he needed to wear the sneakers because of his large, flat feet. (Id. at 5-6;

Pl.'s 2d Opp'n at 16, 21). Officer Santiago responded, "I don't care about your feet[;] if

you got a problem, write a grievance. [Y]ou fuck with me, I fuck you up the ass with no

grease[.]" (Compl. at 6). According to Malik, the officers' comments made him feel

"dirty" and "violated," and he feared for his safety. (Id. at 4-5).

Malik was forced to wear "inadequate, cheaply made" prison-issued

footwear that caused him numerous problems. (Id. at 6). Malik alleges that the DOC

does not take into account "people in [his] situation," or handicapped prisoners, and

arbitrarily chooses who is required to wear prison-issued footwear. (Id. at 7-8). Malik

further alleges that the City of New York and Superintendent Agro "knew [the prison-

issued shoes] were inadequate, cheaply made[] and manufactured[,] and that they caused numerous feet problems." (Id. at 6).

Although Malik evidently had been permitted to retain his sneakers during prior periods of detention, (see id. at 4), the DOC changed its policy effective January 7, 2011, several months before Malik's May 2011 arrest. (Pl.'s 2d Opp'n at 28). Under the revised policy, adolescent and "Special Category" inmates are not permitted to keep personal footwear. Instead, they are issued one pair of DOC footwear either at the time of admission or "during their processing into a Special Category later in their incarceration." (Id.). Adult inmates who are not in Special Categories are "permitted to keep one pair of personal footwear (sneakers or shoes; permissible type only)."[4] (Id.). Malik alleges that the Defendants "systematically created a 'health' and 'safety' haz[]ard by rushing to change the policy with 'no regard' for the 'health' and 'welfare' of the inmates, with total disregard for [their] 'saf[e]ty' and 'well being[.]'" (Compl. at 7). Malik also alleges that the Defendants are violating the DOC's own notice, posted throughout the MDC, which allows "inmates," other than adolescents and Special Category inmates, to retain one pair of personal footwear. (Pl.'s 2d Opp'n at 19-20, 28-30).

Malik spoke with unnamed DOC captains about his footwear concerns, and was told to file a grievance. (Compl. at 8). Malik did file such a grievance at the MDC,

---

[4]     The DOC notice of this policy change does not explain the term "Special Category inmates," nor does it explain what types of sneakers are "permissible." As noted above, it also is unclear from the record whether Malik was an inmate or a pretrial detainee on June 7, when his sneakers were taken.

but subsequently was moved at least three times in three weeks among facilities at Rikers Island because of his grievances.[5]  (Id. at 9).  Malik also filed a grievance at the GRVC. Because Malik was "'bounced' around the system" before receiving a response to his MDC grievance, he did not file any appeals regarding his grievances, and claims that he could not exhaust his administrative remedies.  (Pl.'s 1st Opp'n at 1).  Nevertheless, Malik wrote to Superintendent Agro and verbally complained to the medical staffs at three Rikers facilities, as well as a "gr[ie]vance lady" at the GRVC and a captain at the GMDC.  (Id.; Pl.'s 2d Opp'n at 1, 4).  Malik alleges that the DOC also attempted to keep him from following through on his grievances by (1) failing to have grievance forms available; (2) failing to pick up grievances from the GRVC dropbox; (3) failing to acknowledge his grievances at the MDC; and (4) having a Captain at the GMDC write down Malik's name and telephone numbers, saying that he would "address the issue." (Pl.'s 1st Opp'n at 1).

As a result of wearing the prison-issued footwear, Malik "suffered numerous foot, back and neck problems" including acute callouses on both feet, and had

---

[5]      When Malik filed his Complaint, he was imprisoned at Willard.  (Compl. at 1). Attached to Malik's Complaint are commissary purchase and property receipts indicating that Malik was at the MDC on June 8, 2011; the George R. Vierno Center ("GRVC") on June 14, 2011; and the Eric M. Taylor Center ("EMTC") on either June 14 or 19, 2011 (the handwriting is unclear).  (Id. at 11-13).  Malik also states that his "next and last stop" was at the George Motchan Detention Center ("GMDC").  (Pl.'s 2d Opp'n at 4).  Malik states that he was in DOC custody until approximately June 24, 2011.  (Pl.'s 1st Opp'n at 2).  In a letter dated February 8, 2012, Malik stated that he was back at the MDC after violating parole, and had been in hospitals, drug rehabilitation centers, and county jail before then.  (ECF No. 20).  Malik's latest letter to the Court indicated that he was again imprisoned at the GRVC.  (Pl.'s 2d Opp'n at 9).  It is unclear whether Malik is currently being required to wear the prison-issued shoes.

difficulty walking and standing.  (Compl. at 7-8).  After Malik left DOC custody for

Willard, a state facility, he had to spend time in a prison medical unit, where he was told

that he had "water on [his] knees and art[h]ritis[.]"  (Id. at 9).

        Annexed to Malik's papers is a letter dated February 24, 2012, in which Dr.

Pravin Ranjan, of New York City Correctional Health Services, states that Malik should

be permitted to wear supportive footwear for medical reasons.  (Pl.'s 1st Opp'n at 5).

Malik alleges that he had a similar doctor's note when his sneakers first were confiscated.

(Pl.'s 2d Opp'n at 21).

        Malik also has produced two emails written by an attorney at the Legal Aid

Society and sent to several members of the New York City Board of Correction ("BOC")

in July 2010 and May 2011.  (Pl.'s 2d Opp'n at 32-33).  The emails were written on

behalf of other Rikers inmates who allegedly also were not permitted to wear medically-

necessary personal footwear.  (Id.).  In the July 2010 email, the Legal Aid attorney noted

that, "[t]his reported seizure of medically necessary support shoes appears to be another

clear violation of [BOC] Minimum Health Care Standards which prohibit interference

with medical care and treatment by correction officers and which we have implored DOC,

[the Department of Health] and BOC to put a stop to for years since the initial

requirement that all inmates wear DOC-issued footwear unless exempted for medical

reasons."  (Id. at 33).

        Malik seeks injunctive relief to revise the DOC's footwear policy and train

its officers, and $1 million for "pain and suffering, mental anguish, 'mental trauma,'

violation of [his] religious rights, violation of [his] civil rights, and damage of [his] personal items."  (Compl. at 16).

II.     Standard of Review

A complaint must be dismissed under Rule 12(b)(1) if a court lacks subject matter jurisdiction over the action.  In deciding a Rule 12(b)(1) motion, a court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues.  State Emp. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007).  A plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint that fails to state a claim upon which relief can be granted.  In deciding a motion under Rule 12(b)(6), a court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  While this does not require detailed factual allegations, it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertion[s] devoid of further

"factual enhancement." Id. at 679.  Determining whether the allegations of a complaint

nudge a plaintiff's claims across the line from "conceivable to plausible" requires a court

to "draw on its judicial experience and common sense." Id. at 680.  Moreover, the Court

is "not bound to accept as true" legal conclusions couched as factual allegations.

Twombly, 550 U.S. at 555.

       In deciding a Rule 12(b)(6) motion, "the Court may consider documents

that are referenced in the complaint, documents that the plaintiff relied on in bringing suit

and that are either in the plaintiff's possession or that the plaintiff knew of when bringing

suit, or matters of which judicial notice may be taken." Associated Fin. Corp. v.

Kleckner, No. 09 Civ. 3895 (JGK), 2010 WL 3024746, at *1 (S.D.N.Y. Aug. 3, 2010)

(citing Chambers v. Time Warner, Inc., 292 F.3d 147, 153 (2d Cir. 2002)).  The Court

may take judicial notice of indisputable facts that are "generally known within the trial

court's territorial jurisdiction" or "can accurately and readily be determined from sources

whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b).  The Court

also must read a pro se complaint "liberally" and interpret it "to raise the strongest

arguments" that it may suggest.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)

(internal quotation omitted).

       On a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6), the

Court must first analyze whether it has subject matter jurisdiction under Rule 12(b)(1)

before considering the merits of the action under Rule 12(b)(6).  Sokolowski v. Metro.

Transp. Auth., No. 11 Civ. 2623 (JGK), 2012 WL 1027738, at *1 (S.D.N.Y. Mar. 28,

2012) (citing <u>Rhulen Agency, Inc. v. Alabama Ins. Guar. Assn</u>, 896 F.2d 674, 678 (2d

Cir.2000); <u>McKevitt v. Mueller</u>, 689 F. Supp. 2d 661, 664 (S.D.N.Y. 2010)).

III.    <u>Discussion</u>

        The Defendants move to dismiss the Complaint on the grounds that Malik

(a) failed to exhaust his administrative remedies as required by the Prison Litigation

Reform Act ("PLRA"); (b) failed to allege a cognizable constitutional claim; (c) failed to

allege sufficient personal involvement by Superintendent Agro; (d) failed to allege

municipal liability; and (e) is not entitled to injunctive or compensatory relief.  (ECF No.

18 (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.")) at 1).

    A.    <u>Factual Allegations in Opposition Papers</u>

        At the outset, the Defendants argue that the Court should not consider any

factual allegations raised for the first time in Malik's opposition papers.  In general, a

court will not consider factual allegations advanced for the first time while opposing a

motion.  <u>See</u> <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998).  The

mandate to read a <u>pro se</u> plaintiff's papers liberally, however, makes it appropriate to

consider factual allegations in Malik's opposition papers, in addition to those in his

Complaint, in resolving the motion to dismiss.  <u>See</u> <u>Omoniyi v. Dep't of Homeland Sec.</u>,

No. 10 Civ. 1344 (DF), 2012 WL 892197, at *5 (S.D.N.Y. Mar. 13, 2012); <u>Richardson v.</u>

<u>New York</u>, No. 10 Civ. 6137 (SAS), 2012 WL 76910, at *1 n.10 (S.D.N.Y. Jan. 9, 2012);

<u>Crum v. Dodrill</u>, 562 F. Supp. 2d 366, 373 n.13 (N.D.N.Y. 2008) (citing <u>Gadson v.</u>

Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov.17, 1997));

Collins v. Goord, 438 F. Supp. 2d 399, 403 n.1 (S.D.N.Y. 2006)).

B.      Subject Matter Jurisdiction

In their papers, the Defendants do not expressly state the basis for their

motion to dismiss for lack of subject matter jurisdiction.  To the extent that they maintain

that the Court lacks jurisdiction over this action because Malik failed to exhaust his

administrative remedies, the Defendants' motion must be denied because the PLRA's

exhaustion requirement is not jurisdictional.  See Woodford v. Ngo, 548 U.S. 81, 101-02

(2006); Richardson v. Goord, 347 F.3d 431, 433-34 (2d Cir. 2003) (per curiam).  Rule

12(b)(1) therefore is not the appropriate means to seek the dismissal of Malik's claims

based on his alleged failure to exhaust his administrative remedies.  See Roland v. Smith,

No. 10 Civ. 9218 (VM), 2012 WL 601071, at *2 (S.D.N.Y. Feb. 22, 2012) (citing Varela

v. Demmon, 491 F. Supp. 2d 442, 445-46 (S.D.N.Y. 2007)).

C.      Exhaustion of Administrative Remedies

A Rule 12(b)(6) motion is the proper vehicle for dismissal of a complaint

on PLRA exhaustion grounds if the plaintiff's failure to exhaust is apparent from the face

of the complaint.  Jones v. Bock, 549 U.S. 199, 215 (2007); McCoy v. Goord, 255 F.

Supp. 2d 233, 249 (S.D.N.Y. 2003) (citing Pani v. Empire Blue Cross Blue Shield, 152

F.3d 67, 74-75 (2d Cir. 1998)).  In that connection, the PLRA provides that "no action

shall be brought with respect to prison conditions under . . . any . . . Federal law, by a

prisoner confined in any jail, prison, or any other correctional facility until such

11

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The

Supreme Court has clarified that this "means using all steps that the agency holds out, and

doing so <u>properly</u>," which requires "compliance with [the] agency's deadlines and other

critical procedural rules."  <u>Woodford</u>, 548 U.S. at 81 (internal quotation marks omitted);

<u>see</u> <u>Hernandez v. Coffey</u>, 582 F.3d 303, 305 (2d Cir. 2009).  "The level of detail

necessary in a grievance to comply with the grievance procedures will vary from system

to system and claim to claim, but it is the prison's requirements, and not the PLRA, that

define the boundaries of proper exhaustion."  <u>Jones</u>, 549 U.S. at 218; <u>see</u> <u>Espinal v.</u>

<u>Goord</u>, 558 F.3d 119, 124 (2d Cir. 2009).  "Failure to exhaust is an affirmative defense,

and it is [the D]efendants' burden to establish non-exhaustion."  <u>Sandlin v. Poole</u>, 575 F.

Supp. 2d 484, 488 (W.D.N.Y. 2008) (collecting cases).

   A person detained or incarcerated at a DOC facility must exhaust all of the

steps of the DOC Inmate Grievance Resolution Program ("IGRP").[6]  This requires that

the individual (1) file a grievance with the Inmate Grievance Review Committee

("IGRC"); (2) request a formal hearing before the IGRC if the grievance has not been

resolved informally or the prisoner has not received a response within five days; (3)

appeal any adverse decision by the IGRC to the commanding officer or his designee; (4)

appeal any adverse decision by the commanding officer to the DOC Central Office

---

[6]  The Court may take judicial notice of the IGRP, which is detailed in DOC
Directive Number 3375R-A ("IGRP Directive") (available online at http://www.nyc.gov/
html/doc/downloads/pdf/3375R-A.pdf).  <u>See, e.g.</u>, <u>Martin v. City of N.Y.</u>, No. 11 Civ. 600
(PKC) (RLE), 2012 WL 1392648, at *5 n.2 (S.D.N.Y. Apr. 20, 2012) (citing cases taking
judicial notice of the IGRP).

Review Committee ("CORC"); and (5) appeal any adverse decision by CORC to the BOC.  See Martin, 2012 WL 1392648, at *5; IGRP Directive ¶ IV(B).  Each appellate step of the process sets forth a time limit for a decision, after which the grievant may appeal to the next level if his appeal remains undecided.  IGRP Directive ¶ IV(C)(6).

Malik alleges that he filed grievances at the MDC and GRVC, but concedes that he did not appeal any further through the administrative process.  (See Compl. at 19). Although he also wrote to Superintendent Agro and made informal complaints to medical staff, these efforts did not constitute compliance with the DOC's written grievance procedures and, therefore, do not satisfy the requirement that he exhaust his grievance properly.  See Macias v. Zenk, 495 F.3d 37, 43-44 (2d Cir. 2007).

Malik nevertheless seeks to be excused from the exhaustion requirement because the DOC allegedly never responded to his grievances and prevented him from following up on, or filing, additional grievances.  A prisoner's failure to exhaust administrative remedies before filing a complaint in federal court may be excused if (1) administrative remedies were in fact unavailable; (2) the defendants forfeited the affirmative defense of non-exhaustion by failing to preserve or raise it, or their actions estop them from doing so; or (3) special circumstances justify the failure to properly exhaust.  Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).[7]  "[T]he same facts

---

[7]     The Second Circuit has yet to rule on whether Hemphill remains good law following the Supreme Court's decision in Woodford that a prisoner must comply with all of a prison's grievance procedures before seeking relief in federal court.  548 U.S. at 81; see Amador v. Andrews, 655 F.3d 89, 102-03 (2d Cir. 2011) (declining to reach the issue because appellant

(continued...)

13

sometimes fit into more than one of these categories." Giano v. Goord, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

Malik may not be excused from the exhaustion requirement based solely on the DOC's failure to respond to his grievances.  Under the IGRP, if a prisoner has not received a response to a grievance within five days, the prisoner is required to sign another grievance form requesting a hearing, after which the IGRC must hear the complaint and render a decision within three days of the request for a hearing.  See IGRP Directive ¶ IV(B)(1)(d)(I).  Malik correctly observes in his opposition that courts in other circuits have held that administrative remedies are unavailable when prison officials fail to respond to a prisoner's grievance within the timeframe established by a prison's grievance procedures.  (Pl.'s 1st Opp'n at 1-2); see Marcello v. Dep't of Corr., No. 07 Civ. 9665 (NRB), 2008 WL 2951917, at *3 (S.D.N.Y. July 30, 2008) (citing Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998)).  Unlike the prison grievance procedures addressed in those cases, however, the IGRP places the burden on the prisoner to request a formal hearing when there is no timely response to a

---

[7](...continued)
failed to establish that the defendants were estopped from raising exhaustion as a defense or that "special circumstances" existed); see also Macias, 495 F.3d at 43 n.1 (declining to reach issue). As Judge Holwell has noted, courts in this Circuit have acknowledged the tension between the two cases, but have continued to apply Hemphill.  See, e.g., Rivera v. Anna M. Kross Ctr., No. 10 Civ. 8696 (RJH), 2012 WL 383941, at *3 n.1 (S.D.N.Y. Feb. 7, 2012) (citing Harrison v. Goord, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at *6 n.6 (S.D.N.Y. June 9, 2009); Winston v. Woodward, No. 05 Civ. 3385 (RJS), 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008)).

grievance.  Therefore, under the IGRP, a prisoner who does not receive a response from a

grievance within five days but fails to request a hearing is not excused from the

requirement of exhaustion, unless prison officials prevented him from requesting the

hearing or taking further steps in the IGRP process.  See Rivera, 2012 WL 383941, at *5;

Mamon v. N.Y.C. Dep't of Corr., No. 10 Civ. 8055 (NRB), 2012 WL 260287, at *4

(S.D.N.Y. Jan. 27, 2012); Marcello, 2008 WL 2951917, at *3-4.  In the absence of any

allegation that Malik was misinformed about the applicable procedures or not provided

information about them, Malik's apparent ignorance of the IGRP procedures applicable

after the initial filing of a grievance does not excuse his failure to follow each step.  See

Bryant v. Williams, No. 08 Civ. 778S, 2009 WL 1706592, at *8 (W.D.N.Y. June 17,

2009).

        Malik's assertion that he was prevented from pursuing his grievances

because he was transferred to other DOC facilities is similarly insufficient to excuse his

failure to exhaust.  A prisoner is not excused from the exhaustion requirement if he files a

grievance while in DOC custody and has the opportunity to exhaust his administrative

remedies before being released or transferred to another agency's custody.  Berry v.

Kerik, 366 F.3d 85, 88 (2d Cir. 2003); see also Flowers v. City of N.Y. (DOCS), 668 F.

Supp. 2d 574, 578 (S.D.N.Y. 2009) (prisoner's failure to exhaust argument based on his

transfer from City to State custody rejected because he failed to explain why he could not

exhaust his remedies during the three months before his transfer); Hill v. U.S. Attorney's

Office, E.D.N.Y., No. 08 Civ. 1045 (JS) (AKT), 2009 WL 2524914, at *5 (E.D.N.Y.

15

Aug. 14, 2009) (prisoner who had ten days to file a grievance before transfer to another prison had sufficient time to exhaust administrative remedies).  Here, Malik alleges that he was transferred to at least three different facilities on Rikers Island between June 7 and 24, 2011, and never received a response while being "bounced" around the system. Malik fails to allege, however, that these transfers prevented him from filing the form necessary to seek a hearing or further appealing his grievance during the seventeen days he remained in DOC custody.  The transfers therefore are an insufficient basis to excuse Malik's failure to exhaust his administrative remedies.

Malik further complains that grievance forms were not available and were not picked up at the GRVC.  In Ziemba v. Wezner, 366 F.3d 161, 162-64 (2d Cir. 2004), the Second Circuit held that administrative remedies may be unavailable, and defendants may be estopped from raising non-exhaustion as a defense, when, among other things, a prison fails to provide forms or process grievances.  See also Brown v. Fischer, No. 09 Civ. 371 (TJM) (DRH), 2010 WL 5797359, at *3 (N.D.N.Y. Dec. 8, 2010), adopted by 2011 WL 552039 (N.D.N.Y. Feb. 9, 2011) (failure to exhaust potentially excusable where prison officials did not provide grievance form to prisoner for "multiple weeks"); Bailey v. Fortier, No. 09 Civ. 742 (GLS) (DEP), 2010 WL 4005258, at *6-7 (N.D.N.Y. Aug. 30, 2010), adopted by 2011 WL 3999629 (noting that "however skeptical the court may be," allegation that prison officials did not provide necessary grievance forms to prisoner precluded dismissal of complaint on exhaustion grounds);  Sandlin, 575 F. Supp. 2d at 488 (failure to exhaust excused because prison officials failed to provide grievance

deposit boxes, forms and writing materials, and refused to accept or forward appeals);

Taylor v. Zerillo, No. 08 Civ. 1494 (JG), 2008 WL 4862690, at *2 (E.D.N.Y. Nov. 10,

2008) (exhaustion issue should be decided at summary judgment stage when prisoner

alleges that he was not told about grievance procedures, was not given any grievance

forms, and was transferred from prison to prison to hinder the filing of a grievance);

Collins, 438 F. Supp. 2d at 414-15 (summary judgment on exhaustion grounds denied

because prisoner contended that he could not obtain grievance forms and that prison

officials failed to deliver his appeal).  At this preliminary stage, Malik has sufficiently

alleged that he was prevented from exhausting his administrative remedies because

grievance forms were neither available nor processed.  See Ziemba, 366 F.3d at 164 (if a

court must look beyond the pleadings, "the district court must allow factual development

and address the estoppel claim at the summary judgment stage").  Accordingly, the

Defendants' motion to dismiss Malik's claims for failure to exhaust his administrative

remedies should be denied.

     D.     <u>Inadequate Footwear</u>

     "To state a claim under [Section] 1983, a plaintiff must allege the violation

of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law."  West

v. Atkins, 487 U.S. 42, 47 (1988).  Malik's pleadings may be liberally construed as

raising deliberate indifference and due process claims relating to his footwear.

17

1.    Deliberate Indifference

As noted previously, (n.3 supra), it is unclear whether Malik's confinement in 2011 was as a sentenced prisoner or as a pretrial detainee.  Although claims of deliberate indifference brought by a pretrial detainee arise under the Fourteenth Amendment, while those of a convicted prisoner arise under the Eighth Amendment, both types of claims are subject to the same standard.  See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment").

To establish a deliberate indifference claim arising out of prison conditions, an inmate must prove that (a) objectively, the condition was a "sufficiently serious" violation of the inmate's constitutional rights; and (b) subjectively, the defendant had a state of mind of "deliberate indifference" to inmate health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Liberally construed, the Complaint can be read to state a claim of deliberate indifference to Malik's medical condition by reason of his being forced to wear "inadequate, cheaply made" footwear.  (See Compl. at 6).

Turning first to the objective prong of the deliberate indifference test, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2001).  A sufficiently serious medical condition includes not only conditions that cause death,

18

degeneration and extreme pain, but also conditions that cause or perpetuate chronic pain. Id. at 163.  Among the factors to be considered in determining whether a medical condition is sufficiently serious are whether the injury is one that a reasonable doctor or patient would find important and worthy of comment or treatment; significant effects on an individual's daily activities; and the existence of chronic or substantial pain.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003).

At this preliminary stage, Malik has adequately alleged that he had a sufficiently serious medical condition.  Malik contends, in that regard, that he had a doctor's note that allowed him to keep his sneakers, which suggests that he, in fact, had foot problems, and that prison-issued shoes were inadequate for his needs.  Malik further alleges that after wearing the prison-issued shoes, he suffered foot, back, and neck problems, had difficulty walking and standing, spent extended time in a medical unit at Willard, and was told by medical staff that he had water on the knees and arthritis.

It is, of course, implausible that Malik would have developed arthritis and knee problems as the result of wearing prison-issued shoes for only a matter of weeks. Nevertheless, based upon the doctor's note that Malik alleges he had when his sneakers were taken away and the Willard medical staff's diagnosis of arthritis, it is plausible that Malik had a prior medical condition that was exacerbated by the conduct of Officers

19

Aviles and Santiago.  The medical problems described by Malik, as well as his constant

complaints about the shoes to prison officials, suggest that he may have suffered chronic

pain while wearing the prison-issued shoes.

       Moreover, the existence of the doctor's note and his subsequent medical

diagnoses suggest that being deprived of his sneakers may have caused a sufficiently

serious injury to meet the objective prong of his claim.  See id. at 188 n.14 ("the

'seriousness' determination [in Eighth Amendment denial of medical care cases] will

often be ill-suited for resolution at the pleading stage and will have to await summary

judgment proceedings, at which point a fully developed medical record will inform the

court as to the nature of the inmate's condition") (quoting Gutierrez v. Peters, 111 F.3d

1364, 1372 n.7 (7th Cir. 1997)); see also Paul v. Bailey, No. 09 Civ. 5784 (JSR) (JCF),

2010 WL 3292673, at *5 (S.D.N.Y. July 21, 2010) (prisoner who described continual

pain from prison-issues shoes, filed six grievances about the shoes in three months,

reported for daily treatment of his wounds, routinely bled on his sheets, and had doctors

who concurred that he should be given medically-required shoes satisfied the objective

prong).

       Malik also sufficiently has alleged that Officers Aviles and Santiago acted

with deliberate indifference, which is "something more than mere negligence, . . . [but]

something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result."  Farmer, 511 U.S. at 834-35; see Hernandez v. Keane,

341 F.3d 137, 144 (2d Cir. 2003) (likening deliberate indifference to "the equivalent of

criminal recklessness") (internal quotation marks omitted).  This threshold is met when

defendants are "aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists" and they, in fact, draw that inference.  Farmer, 511 U.S. at

837.

Malik alleges that, during the institutional search, he showed the officers a

doctor's note giving him permission to wear his sneakers rather than the prison-issued

shoes, and that he further told the officers that he had large, flat feet with no arch.  (See

Compl. at 5-6; Pl.'s 2d Opp'n at 16, 21).  Malik's allegations that the officers were aware

of a doctor's order that he should not wear the prison-issued footwear, but ignored the

order, are sufficient to allege deliberate indifference.  See Johnson v. Wright, 412 F.3d

398, 404 (2d Cir. 2005) ("a deliberate indifference claim can lie where prison officials

deliberately ignore the medical recommendations of a prisoner's treating physicians");

Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) ("Prison officials are more than merely

negligent if they deliberately defy the express instructions of a prisoner's doctors.").

Malik therefore has sufficiently alleged that the officers were deliberately

indifferent to his serious medical needs, in violation of his constitutional rights.

2.    Due Process

Malik further alleges that prison officials violated a right to wear his

personal sneakers that had been granted to him by a prison notice posted throughout the

MDC.  This claim, liberally construed, constitutes a procedural due process claim.  The

notice in question states that adolescent and "Special Category" inmates will not be

21

permitted to keep their personal footwear as of January 7, 2011, but that adult inmates not in Special Categories shall be permitted to keep one pair of "permissible" personal footwear. (Pl.'s 2d Opp'n at 28). Malik presumably contends that he is not in a Special Category.

"In a [Section] 1983 suit brought to enforce procedural due process rights, a court must determine [a] whether a property interest is implicated, and, if it is, [b] what process is due before the plaintiff may be deprived of that interest." Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011) (citation omitted). "[W]hen the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (citing Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996); Parratt v. Taylor, 451 U.S. 527, 541 (1981)).

Here, because the sneakers were taken during an institutional search, it is unclear whether an established state procedure is implicated. In any event, even if Malik had sufficiently alleged that his sneakers were taken away as part of an established state procedure, he has failed to show that he was entitled to pre-deprivation due process. "Due process requirements do not apply when the property interest involved is 'de minimis.'" See Goss v. Lopez, 419 U.S. 565, 576 (1975). In an unpublished decision, the Second Circuit has held that while a state statute granted a psychiatric patient civilly committed in a state-run psychiatric facility a property interest in having sneakers with laces while he was confined in the facility, his property interest was de minimis and the

22

Due Process Clause was not implicated, because he "was deprived only of his possessory interest in his sneakers with laces, and he was provided state-issued sneakers with velcro straps as a substitute." Zigmund v. Solnit, 199 F.3d 1325, 1999 WL 758825, at *2 (2d Cir. Sept. 22, 1999) (emphasis in original). Similarly, Malik alleges that he was deprived of his possessory interest in his sneakers but concedes that he was given a voucher and provided with prison-issued shoes as a substitute. To the extent he seeks to vindicate rights related to the deprivation of his property as in Zigmund, his property interest in his sneakers was de minimis. His deprivation of property claim under Section 1983 consequently must be dismissed because, as set forth below, he had adequate post-deprivation state remedies.

   E.   Deprivation of Property

        Malik alleges that Officer Aviles intentionally damaged his religious books, radio, and commissary items. The intentional destruction of property not considered contraband obviously is not part of the established procedure for an institutional search. Nevertheless, such an intentional act by a state employee does not violate due process if a meaningful post-deprivation remedy is available under state law. See Hudson v. Palmer, 468 U.S. 517, 533 (1986). New York provides such an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, and conversion. Dove v. City of N.Y., No. 99 Civ. 3020 (DC), 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000); Cook v. City of N.Y., 607 F. Supp. 702, 704 (S.D.N.Y. 1985); Cantave v. N.Y.C. Police Officers, No. 09 Civ. 2226 (CBA) (LB), 2011 WL 1239895, at *7 (E.D.N.Y. Mar.

23

28, 2011).  Accordingly, Malik's Section 1983 claim relating to the destruction of his

property must be dismissed.[8]

F.      Religious Claims

Malik's Complaint may also be read to allege that the actions of Officers

Aviles and Santiago violated his right to the free exercise of religion under the First

Amendment, and thus may also state a claim under the Religious Land Use and

Institutionalized Persons Act ("RLUIPA").  To succeed on a claim under the Free

Exercise Clause, "the prisoner must show at the threshold that the disputed conduct

substantially burdens his sincerely held religious beliefs."  Salahuddin v. Goord, 467 F.3d

263, 274-75 (2d Cir. 2006).  The Defendants then bear the "relatively limited burden of

identifying the legitimate penological interests that justify the impinging conduct[.]"  Id.

at 275.  Under the RLUIPA, "a government shall not 'impose a substantial burden' on the

'religious exercise' of inmates . . . unless the government shows that the burden furthers a

---

[8]      Although Malik has not asserted a viable federal due process claim, his
Complaint, liberally construed, could be read to assert the potentially-applicable state law causes
of action.  If this case ultimately reaches the trial stage, the Court may wish to have these state
law causes of action considered by the trier of fact.  Alternatively, if summary judgment
eventually is granted with respect to Malik's federal claims, the Court may wish to dismiss
Malik's state law claims rather than exercise supplemental jurisdiction.  See Carnegie-Mellon
Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also 28 U.S.C. § 1367(c)(3) ("[D]istrict courts
may decline to exercise supplemental jurisdiction . . .  if . . . the district court has dismissed all
claims over which it has original jurisdiction.").  "[I]n the usual case in which all federal-law
claims are eliminated before trial, the balance of factors . . . will point toward declining to
exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ., 484 U.S. at
350 n.7; see also Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y., 464 F.3d 255, 262 (2d Cir.
2006) ("It is well settled that where . . . the federal claims are eliminated in the early stages of
litigation, courts should generally decline to exercise pendent jurisdiction over remaining state
law claims.").

compelling governmental interest by the least restrictive means." Id. at 273-74 (citing 42 U.S.C. § 2000cc-1(a)).

Malik's allegations that he practices Islam and that Officers Aviles and Santiago ripped up and destroyed his sacred Quran states a legally sufficient claim under both the Free Exercise Clause and the RLUIPA. See Hudson, 468 U.S. at 547 n.13 (Stevens J., concurring in part and dissenting in part) ("A prisoner's possession of . . . personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First Amendment."); Vega v. Lantz, No. 04 Civ. 1215 (DFM), 2006 WL 2788374, at *3, *13 (D. Conn. Sept. 26, 2006) (denying judgment on the pleadings with respect to claim that defendants mishandled prisoner's Quran during inspections by tossing it on the cell floor and touching it with their bare hands); Shaw v. Norman, No. 6:07 Civ. 443, 2009 WL 1780123, at *3-4 (E.D. Tex. June 22, 2009) (confiscation of Quran, which was "clearly central to the practice of the Plaintiff's religion," gave rise to a RLUIPA violation), appeal dismissed, 389 Fed. App'x 408, 409 (5th Cir. 2010). Insofar as the Defendants seek to dismiss Malik's religious claims, their motion therefore should be denied.

G.    Verbal Abuse

Verbal abuse, threats, and intimidation standing alone, without injury or damage, do not amount to a constitutional deprivation. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (name-calling without "any appreciable injury" is not a constitutional violation); Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 325 (S.D.N.Y.

2006) ("verbal intimidation does not rise to the level of a constitutional violation");

Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity

alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional or

reprehensible it might seem,' does not constitute the violation of any federally protected

right and therefore is not actionable under 42 U.S.C. § 1983").  To the extent Malik seeks

any relief based on his allegations of verbal harassment, threats, and unprofessional

conduct by Officers Aviles and Santiago, his claims consequently must be dismissed.

    H.    Strip Search

        "The Fourth Amendment prohibits only unreasonable searches."  Bell v.

Wolfish, 441 U.S. 520, 558 (1979).  In determining the reasonableness of a search, courts

must "consider the scope of the particular intrusion, the manner in which it is conducted,

the justification for initiating it, and the place in which it is conducted."  Id. at 559.

Prison officials "must be permitted to devise reasonable search policies to detect and

deter the possession of contraband in their facilities."  Florence v. Bd. of Chosen

Freeholders of Cnty. of Burlington, 132 S.Ct. 1510, 1517 (2012).  The Supreme Court

recently has held that prison officials may conduct a strip search of any prisoner,

including detainees suspected of committing minor offenses, "unless there is 'substantial

evidence' demonstrating their response to the situation is exaggerated."  Id. at 1518

(quoting Block v. Rutherford, 468, U.S. 576, 584-85 (1984)).  Nevertheless, the

"[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a

civilized society[.]"  Hudson, 468 U.S. at 528.

26

Malik has failed to allege sufficiently that the strip search was unreasonable.  Although he complains about the manner in which the strip search was conducted based on the comments made by the officers, he does not allege any physical or sexual abuse.  Moreover, Malik concedes that the strip search was part of an "institutional" search.  Such "[r]outine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment."  Castro-Sanchez v. N.Y. State Dep't of Corr. Servs., No. 10 Civ. 8314 (DLC), 2011 WL 6057837, at *8 (S.D.N.Y. Dec. 6, 2011) (citing N.G. v. Connecticut, 382 F.3d 225, 232 (2d Cir. 2004)); see Covino v. Patrissi, 967 F.2d 73, 77-80 (2d Cir. 1992).  His strip-search claim therefore must be dismissed.  Additionally, to the extent that Malik's Complaint can be construed as alleging claims against the officers for illegally entering his cell, his claim must be dismissed because a prisoner does not have a reasonable expectation of privacy in his prison cell.  See Hudson, 468 U.S. at 525-26.

I.      Retaliation

Malik further alleges that he was transferred to various Rikers Island facilities in retaliation for his grievances.  To state a First Amendment claim for retaliation, a prisoner must demonstrate that:  (a) he was engaged in constitutionally-protected activity, (b) the defendant took adverse action against the prisoner, and (c) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity.  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004).  "[B]ecause prisoner retaliation claims are easily

27

fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, [courts] are careful to require non-conclusory allegations." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotations omitted).

Malik has sufficiently alleged that he was engaged in a constitutionally-protected activity by filing grievances. See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983"); see also Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (appeal of disciplinary order was protected by the First Amendment). Malik also has sufficiently alleged an adverse action based on his transfer to other prisons. See Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998) ("prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights").

At this stage, Malik further has alleged adequately that there was a causal connection between his grievances and the transfers. Malik alleges that he was transferred to various facilities on Rikers Island because of his grievances. To sufficiently allege a causal connection, Malik's allegations must support an inference that the protected conduct was "a substantial or motivating factor for the adverse actions taken by prison officials." Bennett, 343 F.3d at 137. A causal connection may be established by showing that the protected activity was closely followed in time by the adverse action. See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). In Espinal, the passage of six

28

months between the protected activity and the alleged retaliatory action was sufficient to support an inference of causal connection.  Id.  Here, Malik does not specify when he filed his first grievance, but states that he filed it at the MDC.  If so, he must have filed the grievance within one week of the search on June 7, because he was transferred to the GRVC on June 14 and thereafter was transferred twice more before June 24.  Given these numerous transfers within weeks after the filing of Malik's grievance, he has sufficiently alleged a causal connection based on the temporal proximity.

Where Malik's claim falters, however, is the lack of any allegations regarding the personal involvement of any named defendants in the decision to move Malik rapidly from one facility to another, allegedly in retaliation for the filing of his grievances.  It is settled law that a defendant's personal involvement in an unlawful action is a prerequisite to an award of compensatory damages under Section 1983.  Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).  A plaintiff may establish the personal involvement of a supervisory defendant by showing that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

29

Here, Malik has failed to show any personal involvement on the part of the Defendants in connection with his retaliation claim.  That claim therefore must be dismissed.

J.     Municipal Liability

A complaint brought under Section 1983 alleging violations of a plaintiff's federally protected rights by a municipality, such as the City of New York, must include factual allegations suggesting the existence of an officially-adopted policy or custom of the municipality that caused plaintiff's injury.  See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403-04 (1997);  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978).  A plaintiff need not identify an express rule or regulation; it is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law.  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004).

Malik further alleges that the City of New York has a policy or custom of providing inadequate footwear for prisoners.  In support of this contention, Malik has provided emails from a Legal Aid attorney written on behalf of other Rikers inmates indicating that the DOC has not provided medical exemptions to its footwear policy "for years."  (See Pl.'s 2d Opp'n at 32-33).  At this preliminary stage, the Legal Aid emails are sufficient to state a Monell claim against the City of New York based on a "pattern of similar constitutional violations."  See Connick v. Thompson, 131 S. Ct. 1350, 1360

30

(2011); see also Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing."). The Defendants' motion to dismiss Malik's claims against the City of New York therefore should be denied.

      K.    Superintendent Agro's Personal Involvement

          Malik's Complaint fails to allege sufficiently that Superintendent Agro was personally involved in any alleged constitutional violations. As Magistrate Judge Peck recently noted in a Report and Recommendation to Your Honor, it is unclear whether, and to what extent, the five Colon categories cited by the Second Circuit as bases for supervisory liability have survived the Supreme Court's decision in Iqbal. See Inesti v. Hicks, No. 11 Civ. 2596 (PAC) (AJP), 2012 WL 2362626, at *11 (S.D.N.Y. June 22, 2012). It nevertheless unquestionably remains the law that liability for damages in a Section 1983 action may not be based on the doctrines of respondeat superior or vicarious liability. Monell, 436 U.S. at 691.

          Malik alleges in conclusory terms that Superintendent Agro knew that he was provided with insufficient footwear. (Compl. at 6). The only factual basis for this allegation, however, is that Malik wrote Superintendent Agro a letter regarding his grievances. (Pl.'s 2d Opp'n at 1, 4). This allegation is insufficient to make out a prima facie claim of personal involvement against supervisors. See Shomo v. City of N.Y., 579 F.3d 176, 184 (2d Cir. 2009) (dismissing Section 1983 supervisory liability claim for lack of personal involvement when "[t]he only allegation pertaining to these defendants [wa]s

that [the plaintiff] filed complaints with [their offices]"); but see Wright, 21 F.3d at 502

(finding no personal involvement for supervisor who received letter from prisoner about

general conditions of confinement without claims of specific unconstitutional procedures,

but personal involvement for supervisor who had notice of unconstitutional procedures

through service of court papers).  Malik also has failed to allege that Superintendent Agro

created or allowed the continuance of an unconstitutional policy or custom, or that she

was grossly negligent in supervising subordinates who committed the allegedly wrongful

acts.  See Alston v. Bendheim, 672 F. Supp. 2d 378, 389-90 (S.D.N.Y. 2009) ("To

maintain such a claim, . . . an inmate must adequately 'allege that the official had actual

or constructive notice of the unconstitutional practices and demonstrated gross negligence

or deliberate indifference by failing to act.'").  For these reasons, Malik's claims against

Superintendant Agro must be dismissed.

      L.      Limitations on Relief

      Citing the PLRA, 42 U.S.C. § 1997e(e), the Defendants seek an order

dismissing Malik's claims to the extent that they do not allege a physical injury.  The

Defendants further seek the dismissal of Malik's claims for equitable relief.

      Section 1997e(e) states that "[n]o Federal civil action may be brought by a

prisoner confined in a jail, prison, or other correctional facility, for mental or emotional

injury suffered while in custody without a prior showing of physical injury."  Thus, under

the statute, a "plaintiff cannot recover damages for mental or emotional injury for a

constitutional violation in the absence of a showing of actual physical injury."  Thompson

v. Carter, 284 F.3d 411, 417 (2d Cir. 2002).  Section 1997e(e), however, does not contain

any limitations on injunctive or declaratory relief, nominal and punitive damages, or

damages for a physical injury or mental or emotional injury suffered in addition to the

physical injury.  See id. at 418-19.  The statute also does not bar compensatory damages

for the loss of property.  Id. at 418.

Furthermore, a plaintiff need not plead physical injury in a complaint

covered by the PLRA.  See Frieson v. City of N.Y., No. 11 Civ. 4611 (JGK), 2012 WL

1948782, at *2 (S.D.N.Y. May 30, 2012) (denying motion to limit damages pursuant to

§ 1997e(e) because, "at the motion to dismiss stage, the Court cannot, and need not,

conclusively resolve the factual question of whether or not the plaintiff suffered physical

injury in addition to his claimed mental and emotional injury"); In re Nassau Cnty. Strip

Search Cases, No. 99 Civ. 2844 (DRH), 2010 WL 3781563, at *2 (E.D.N.Y. Sept. 22,

2010) ("As § 1997e(e) is a limitation on recovery and not an affirmative defense to

liability, it need not be pled.").

The Defendants' motion mistakenly assumes that the only injury that a

plaintiff may suffer without a physical injury is mental or emotional harm.  The Second

Circuit has held, however, that intangible deprivations of liberty and personal rights are

distinct from claims for pain and suffering, mental anguish, and mental trauma.

See Kerman v. City of N.Y., 374 F.3d 93, 125 (2d Cir. 2004) ("The damages recoverable

for [a plaintiff's Fourth Amendment claims] are separable from damages recoverable for

such injuries as physical harm, embarrassment, or emotional suffering.").  Accordingly,

the PLRA's physical injury requirement does not bar an award of compensatory damages for First Amendment violations.  See Rowe v. Shake, 196 F.3d 778, 781 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental or emotional injury he may have sustained"); Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (Section 1997e(e) "does not apply to First Amendment claims regardless of the form of relief sought"); Pacheco v. Drown, No. 06 Civ. 0020 (GTS) (GHL), 2008 WL 144400, at *13 (N.D.N.Y. Jan. 11, 2010) (Section 1997e(e)'s physical injury requirement does not apply to First Amendment violations) (citing Auleta v. LaFrance, 233 F. Supp. 2d 396, 403 (N.D.N.Y. 2002); Cancel v. Mazzuca, 205 F. Supp. 2d 128, 138 (S.D.N.Y. 2002)); Lipton v. Cnty. of Orange, N.Y., 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004) (an exception to the PLRA's physical injury requirement for compensatory damages exists where a prisoner's claims arise under the First Amendment).

          The claims that survive the Defendants' motion are not subject to the PLRA's limitations on compensatory damages without a physical injury for several reasons.  First, Malik's religion and retaliation claims allege deprivations of personal rights under the First Amendment which do not fall under the PLRA's physical injury requirement for compensatory damages.  Second, there is no limitation on the damages arising out of Malik's allegedly inadequate medical care claim because he has alleged a physical injury.  Finally, to the extent the Court exercises supplemental jurisdiction, Malik's claims for loss of property are not barred by the PLRA.  See Thompson, 284 F.3d

34

at 418.  The defendants motion to limit Malik's damages award at this early stage therefore must be denied.

The Defendants also contend that Malik is not entitled to injunctive relief because he was released from DOC custody after his grievance was filed.  While Malik was not in DOC custody at the time that he filed his Complaint, he has since returned to DOC custody.  It follows that the Court cannot conclude that the privations that Malik allegedly suffered in the past will not recur.  In particular, to the extent that Malik is still being forced to wear prison-issued shoes, his request for injunctive relief should be permitted to survive the Defendants' motion to dismiss.

IV.    Conclusion

For the foregoing reasons, the Defendants' motion to dismiss should be granted in part and denied in part.

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  The failure to

file these timely objections will result in a waiver of those objections for purposes of

appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474

U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:       New York, New York
             August 15, 2012

_____
        FRANK MAAS
United States Magistrate Judge

Copies to:

Hon. Paul A. Crotty
United States District Judge

Abdul Malik a/k/a Bryon E. Rogers
349-12-02018
09-09 Hazen Street
East Elmhurst, NY 11370

Jeffrey Scott Dantowitz
Office of Corporation Counsel NYC
100 Church Street
New York, NY 10007